**Elizabeth N. CALLAWAY, Petitioner–Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.**

**Docket No. 99–4022.**

United States Court of Appeals, Second Circuit.

Argued: Sept. 16, 1999

Decided: Sept. 15, 2000

Frank Agostino, Calo Agostino, P.C., Hackensack, N.J., for Appellant.

Robert J. Branman (Loretta C. Argrett, Assistant Attorney General and Richard Farber, Attorney, on the brief), Department of Justice, Washington, D.C., for Appellee.

Before: LEVAL, CABRANES and POOLER, Circuit Judges.

JUDGE POOLER concurs, in part, in a separate opinion.

LEVAL, Circuit Judge:

Elizabeth N. Callaway ("the taxpayer" or "Elizabeth") appeals from so much of the March 10, 1998 Opinion and Order and the November 17, 1998 Decision of the United States Tax Court (Peter J. Panuthos, *Chief Special Trial Judge*) that held that computational adjustments and subse-

quent affected items notices of deficiency issued to her were valid and were not time-barred. We have jurisdiction pursuant to I.R.C. § 7482(a).

This is a case of first impression in the Courts of Appeals, raising an issue of partnership taxation procedure: A husband held a partnership interest as separate property but filed a joint tax return with his wife thereby taking his distributive share of the partnership's tax items into account in computing the tax owed on the couple's aggregate income. *See* I.R.C. §§ 702, 6013(a), (d)(3); Treas. Reg. §§ 1.702–1(a), 1.6013–4(b). The husband died, and his estate filed a request for prompt assessment. *See* I.R.C. § 6501(d). As a result of the request, the husband's share of the partnership's tax items converted from partnership items into nonpartnership items. *See* I.R.C. § 6231(b)(1)(D), (c)(1); Temp. Treas. Reg. § 301.6231(c)–8T. The question presented is what effect that conversion has on the procedures for assessing deficiencies attributable to those same items against his wife. We conclude that where only the husband owned an interest in his distributive share of partnership items, the conversion of his partnership items into nonpartnership items necessarily converts into nonpartnership items all the items taken into account on the joint return by reason of his interest. They are therefore nonpartnership items with respect to assessments against either spouse. As a consequence: (1) statutory notice of deficiency procedures apply to an assessment of deficiencies attributable to these items against either spouse, *see* I.R.C. § 6230(a)(2)(A)(ii); and (2) the statute of limitations period will be the greater of one year or such longer period as remains open against either spouse. *See* I.R.C. § 6229(f).

Applying these conclusions of law to the facts of this case, we conclude the Commissioner had until December 23, 1992 to issue any statutory notice of deficiency to either taxpayer or her deceased spouse's estate. The 1993 "precautionary" assessments, the 1996 computational adjustments and the 1996 affected items notices of deficiency were therefore procedurally invalid and time barred, with respect to both the taxpayer and her deceased spouse's estate.

We therefore reverse the Tax Court's ruling and remand for further proceedings.

## BACKGROUND

### A. TEFRA's Statutory and Regulatory Framework.

Under the Internal Revenue Code (the "Code") partnerships are not taxable entities. *See* I.R.C. § 701; Treas. Reg. § 1.701–1.[1] Therefore, unlike individuals and corporations, partnerships do not file tax returns; instead they file information returns. *See* I.R.C. § 6031; Treas. Reg. § 1.6031–1. While partnerships are not taxed, taxes are imposed on their partners on a pass-through basis. Each partner is individually required to take into account his distributive share of the partnership's tax items in computing his income tax liability. *See* I.R.C. §§ 701, 702; Treas. Reg. § 1.702–1(a).

Prior to 1982, adjustments to the tax liability of the individual partners based on the operations of the partnership were determined at the individual partners' level. This resulted in duplication of administrative and judicial resources and sometimes in inconsistent results as between partners. *See Randell v. United States,*

---

1. All statutory references are to the Internal Revenue Code of 1986, codified as Title 26 of the United States Code, as in effect at all relevant times. Regulatory references are to the Treasury Regulations as codified in Title 26 of the Code of Federal Regulations. Few of the Treasury Regulations issued under TEFRA have been finalized. However, "[u]n- til the passage of final regulations, temporary regulations are entitled to the same weight we accord to final regulations." *E. Norman Peterson Marital Trust v. Commissioner,* 78 F.3d 795, 798 (2d Cir.1996); *see Truck & Equipment Corp. of Harrisonburg v. Commissioner,* 98 T.C. 141, 149, 1992 WL 18381 (1992).

64 F.3d 101, 103 (2d Cir.1995). The Internal Revenue Service was obligated to audit each partner individually to conform the tax treatment of all the partners. To extend the statute of limitations with respect to the partners' liability for the operation of the partnership, the IRS needed to obtain consent for an extension from each of the partners, not the partnership. Similarly, settlement agreements or judicial determinations with regard to one partner were not binding on the other partners. And because the IRS might fail to complete these individual audits and adjustments before the statute of limitations expired with respect to a partner, inconsistent treatment of similarly situated taxpayers could result. *See generally* H.R. Conf. Rep. No. 97–760, at 599 (1982), U.S. Code Cong. & Admin. News at 1190, 1371, *reprinted in* 1982–2 C.B. 600, 662.

To ameliorate these difficulties, Congress enacted the Tax Treatment of Partnership Items Act of 1982, as Title IV of the Tax Equality and Fiscal Responsibility Act of 1982 ("TEFRA"), Pub.L. No. 97–248, 96 Stat. 324, 648, now codified as amended as subchapter C of Chapter 63 of the Code, at sections 6221 to 6234. The TEFRA provisions establish a single unified procedure for determining the tax treatment of all partnership items at the partnership level, rather than separately at the partner level. *See* H.R. Conf. Rep. No. 97–760, at 599–600. Under the TEFRA provisions "the tax treatment of any partnership item ... shall be determined at the partnership level." I.R.C. § 6221. A "partnership item" is a tax item "more appropriately determined at the partnership level than at the partner level." I.R.C. § 6231(a)(3). As prescribed by the Regulations, the term "partnership item" includes "[t]he partnership aggregate and each partner's share of ... [i]tems of income, gain[,] loss, deduction, or credit of the partnership." Treas. Reg. § 301.6231(a)(3)–1(a)(1)(i). A "nonpartnership item" is one that is "not a partnership item." I.R.C. § 6231(a)(4).

The determination whether an item is a "partnership item" or a "nonpartnership item" is the threshold question for the application of the TEFRA procedures. While partnership items are subject to TEFRA's centralized audit procedures, *see* I.R.C. §§ 6211(c), 6216(4), 6221, 6230(a)(1), the tax treatment of nonpartnership items is determined at the level of the individual partner's return, pursuant to the notice of deficiency procedures of subchapter B of Chapter 63, sections 6211 to 6216. *See* I.R.C. §§ 6212(a), 6230(a)(2). The text and structure of the Code, as well as the legislative history of the TEFRA provisions, leave no doubt that Congress intended the procedures of subchapters B and C to have mutually exclusive jurisdiction over nonpartnership and partnership items respectively. *See generally Maxwell v. Commissioner*, 87 T.C. 783, 788, 1986 WL 22033 (1986) (Congress intended existing rules relating to administrative and judicial proceedings, statutes of limitations and settlements to continue to govern determination of tax liability attributable to nonpartnership items); H.R. Conf.Rep. 97–760, at 611 ("Neither the Secretary nor the taxpayer will be permitted to raise nonpartnership items in the course of a partnership proceeding nor may partnership items, except to the extent they become nonpartnership items under the rules, be raised in proceedings relating to nonpartnership items of a partner.").

In certain circumstances a partnership item may be "treated as" a nonpartnership item. *See* § 6231(a)(4), (b)(1). The effect of such a conversion is therefore to except the item in question from audit proceedings under subchapter C and subject it instead to notice of deficiency procedures under subchapter B. *See* I.R.C. § 6230(a)(2)(A)(ii). As set out later, this case involves such a conversion.

█ In general, under subchapter C, a partner must file an income tax return that is consistent with the partnership return. *See* I.R.C. § 6222(a). The partner's distributive share of any partnership

item must be reported in the same manner as on the partnership's information return (*i.e.*, it must have the same amount, the same characterization, the same timing). *See id.;* I.R.C. § 702(b); Treas. Reg. § 1.702–1(b), Temp. Treas. Reg. § 301.6222(a)–1T. If a partner-taxpayer disagrees with the partnership's reporting of the partner's distributive share of partnership items, the partner may either notify the IRS of his election to treat a partnership item inconsistently with its treatment on the partnership return, *see* I.R.C. § 6222(b), or request an administrative adjustment of the partnership item, *see* I.R.C. § 6227(a). Otherwise, if a partner treats items inconsistently with the partnership's treatment of those items, a deficiency may be assessed against the partner without notice, as a "computational adjustment." *See* I.R.C. §§ 6222(c), 6230(a)(1); Temp. Treas. Reg. § 301.6231(a)(6)–1T(a); *see, e.g., Bob Hamric Chevrolet, Inc. v. I.R.S.,* 849 F.Supp. 500, 510 (W.D.Tex.1994). "The term 'computational adjustment' means the change in the tax liability of a partner which properly reflects the treatment ... of a partnership item." I.R.C. § 6231(a)(6). No further deficiency procedures are required. *See Randell,* 64 F.3d at 104.

Such peremptory adjustments of a partner's return are justified because the partner will already have benefitted from notice of and the right to participate in any proceeding under the TEFRA provisions to determine the partnership items at the partnership level. The IRS may adjust partnership items only at the partnership level and only after following the TEFRA procedures. *See* I.R.C. §§ 6221, 6225(a);

Temp. Treas. Reg. § 301.6221–1T(a). To audit a partnership return, the IRS must send notice of the beginning of an administrative proceeding ("NBAP") to the partners entitled to notice (the "notice partners")[2]. *See* I.R.C. § 6223(a). The Code further provides that "[a]ny partner has the right to participate in any administrative proceeding relating to the determination of partnership items at the partnership level." I.R.C. § 6224(a). Similarly, if after completing its audit the IRS adjusts the partnership return, it must send the notice partners a notice of final partnership administrative adjustment ("FPAA"). *See* I.R.C. § 6223(a)(2), (d)(2).

Within 90 days of the date the IRS mails the FPAA notice, the partnership's "tax matters partner" (TMP)[3] may contest the FPAA by filing a petition for readjustment in Tax Court, the Court of Federal Claims or the appropriate federal district court. *See* I.R.C. § 6226(a). If the TMP does not file a petition within this period, then any notice partner may file a petition for readjustment within the next 60 days. *See* I.R.C. § 6226(b)(1). Regardless whether the petition for judicial readjustment is filed by the TMP or by a notice partner, all other partners are treated as parties to the suit, provided that they have an ongoing interest in the outcome of the proceedings. *See* I.R.C. § 6226(c), (d). In this manner TEFRA allows all partners, if they choose, to litigate a dispute with the IRS in a single proceeding that binds all.

After the FPAA adjustments become final (*i.e.*, after they go unchallenged for 150 days or are judicially resolved in a section 6226 proceeding), the IRS may assess

---

**2.** The Code defines a "notice partner" as a partner entitled to notice under section 6223(a). *See* I.R.C. § 6231(a)(8). When a partnership has 100 or more partners, a notice partner is generally one who owns at least a one percent interest in the partnership. *See* I.R.C. § 6223(b)(1). The regulations make clear that Elizabeth was not entitled to notice separate from James. *See* Temp Treas. Reg. § 301.6231(a)(2)–1T(a)(3)(i). They also make clear that she did not count as a partner

for the purposes of the counting rules. *See id.* –1T(a)(2) (referencing I.R.C. §§ 6223(b) (special rules for partnerships with more than 100 partners), 6231(a)(1)(B) (exception for small partnerships)).

**3.** In general, the TMP is the general partner designated in the partnership agreement to handle tax matters. *See* I.R.C. § 6231(a)(7).

partners with the tax which properly accounts for their distributive share of the adjusted partnership items, without notice, as a computational adjustment. *See* I.R.C. §§ 6225(a), 6230(a)(1), 6231(a)(6). In certain cases, where no further factual determinations are necessary at the partner level, an assessment attributable to an "affected item" may also be made by computational adjustment. *See N.C.F. Energy Partners v. Commissioner*, 89 T.C. 741, 744, 1987 WL 45298 (1987)[4]; Temp. Treas. Reg. § 301.6231(a)(6)–1T(a). An "affected item" is "any item to the extent such item is affected by a partnership item." I.R.C. § 6231(a)(5); *see also* Temp. Treas. Reg. § 301.6231(a)(5)–1T(a). In other cases, where factual determinations are necessary at the partner level, assessments attributable to affected items may be made only after the conclusion of the partnership-level proceeding and then only by issuing a notice of deficiency pursuant to subchapter B. *See* I.R.C. § 6230(a)(2)(A)(i); *N.C.F. Partners*, 89 T.C. at 744–45. For all partnership taxable years at issue in this case, additions to tax for negligence and valuation overstatements attributable to adjusted partnership items are treated as affected items requiring partner level factual determinations.[5]

The TEFRA subchapter also provides the statute of limitations on assessments of tax attributable to a partner's partnership items. In general, a three-year limitations period runs from the later of the date of filing of the partnership return or its due date. *See* I.R.C. § 6229(a) (taxes imposed

under subtitle A), 6229(g) (applying same period to any addition to tax imposed under subchapter A of chapter 68). As to assessments attributable to partnership items, these provisions supersede the individual partner's general three-year limitations period that begins to run on the filing of the taxpayer's return. *See* I.R.C. § 6501(a), 6501(n)(2). The section 6229(a) period may be extended by agreement between a partner and the IRS; the TMP has the authority to execute an extension agreement binding on all partners, if entered into before the expiration of the period provided by subsection 6229(a). *See* I.R.C. § 6229(b)(1). The running of the limitations period is tolled while administrative and judicial proceedings under TEFRA are pending and for one year after the adjustments become final. *See* I.R.C. § 6229(d).

Because, in general, adjustments to partnership items cannot be made except through TEFRA's centralized proceedings, to ensure that any person whose tax liability may be affected by those procedures receives due process, TEFRA provides an expanded definition of "partner" and permits all such "partners" certain notice and participation rights. For the purposes of subchapter C, "[t]he term 'partner' means" both "(A) a partner in the partnership" and "(B) any other person whose income tax liability under subtitle A is determined in whole or in part by taking into account directly or indirectly partnership items of the partnership." I.R.C. § 6231(a)(2).

---

**4.** An example of an affected item that requires no further factual determination at the partner level would be a partner's medical expense deduction, pursuant to I.R.C. § 213(a). The allowable deduction is a function of the partner's adjusted gross income, which in turn depends on the partner's distributive share of the partnership income or loss. Determining the allowed deduction is a mathematical calculation and requires no further factual finding. *See generally Maxwell*, 87 T.C. at 792 n. 7.

**5.** The Taxpayer Relief Act of 1997, Pub.L. No. 105–34, § 1238, 111 Stat. 788, 1026–27, vari-

ously amended Code sections 6221, 6226(f) and 6230(a), (c) to provide that "any penalty, addition to tax, or additional amount" that related to an adjustment of a partnership item would be determined solely at the partnership level. However, these amendments apply only to partnership taxable years ending after August 5, 1997, the date of the Act's enactment. *See* Pub.L. No. 105–34, § 1238(c). As a consequence, for tax years ending after that date, deficiency notices under subchapter B are no longer required when assessing the additions to tax at issue in this case. *See* I.R.C. § 6230(a)(2)(A)(i) (as amended).

For our purposes, this statutory provision chiefly affects the spouses of members in a partnership. Ordinarily, there are two circumstances where a spouse's tax liability will be determined in part by taking into account partnership items; each is expressly acknowledged under separate regulations, but each arises under this statutory provision. First, a spouse may own a joint interest in the member's partnership interest. A joint interest "includes tenancies in common, joint tenancies, tenancies by the entirety and community property." Temp. Treas. Reg. § 301.6231(a)(12)–1T(a). Such a spouse is treated as a partner. *See id.* Because such a spouse *owns* a share of the member's distributive share of the partnership items, she[6] will be required to take her share of those items into account whether she files a joint or a separate tax return, *see, e.g.,* Treas. Reg. § 1.702–1(d), and in either case, her tax liability will be determined in part by taking partnership items into account. Accordingly, such a spouse will be treated as a partner whether she files jointly or separately. *See* I.R.C. § 6231(a)(2)(B). Her treatment as a partner derives, in part, from her property interest under state law. While both spouses holding a joint interest are treated as partners, the Code further provides that "a husband and wife who have a joint interest in a partnership shall be treated as 1 person." I.R.C. § 6231(a)(12).

Second, the spouse may own no interest in the member's partnership interest. Nonetheless, *if* the spouse and the member file a joint return, because (1) the member will be required to take his distributive share of the partnership items into account in computing the couple's aggregate income, *see* I.R.C. § 702(a); Treas. Reg. § 1.702–1(a); (2) a single tax liability is computed on the basis of this aggregate income, *see* I.R.C. § 6013(d)(3); and (3) each spouse's liability for that tax

is joint and several, *see id.,* the spouse meets the requirements of Code section 6231(a)(2)(B)—that is, her tax liability is in part determined by taking into account partnership items. Accordingly, such a spouse is also "treated as a partner," as confirmed by a separate regulation. Temp. Treas. Reg. § 301.6231(a)(2)–1T(a). However, such a spouse will not be treated as a partner, if she files separately and owns no interest in or share of the member's partnership items.

The purpose of the TEFRA provisions described above is to ensure that, in general, partnership items are adjusted once at the partnership level. All partners, whose tax liability will be affected by its outcome, have the opportunity to participate in the audit allowing each to be bound by its result. In general, there are few exceptions to these centralized procedures.

However, one way for a partner to avoid being treated under the TEFRA framework is to fall within one of several limited exceptions that "the Secretary determines by regulation to present special enforcement considerations." I.R.C. § 6231(c)(1)(E). Where the Secretary finds these special enforcement considerations to exist and where the Secretary determines "that to treat items as partnership items will interfere with the effective and efficient enforcement of this title" then "such items shall be treated as nonpartnership items for the purpose of this subchapter." I.R.C. § 6231(c)(2). By converting partnership items to nonpartnership items, the Secretary thereby excepts them from the partnership-level TEFRA procedures and subjects them instead to the individual deficiency procedures under subchapter B. *See* I.R.C. § 6230(a)(2)(A)(ii). The Code further provides that, because the partner no longer has an interest in their outcome, this partner may no longer participate in, nor be

---

6. On the facts of this case, the member spouse is the husband, James. To avoid confusion, in the hypothetical discussion of spouses, one of whom is a contractual member of the partnership, we will refer to the member as the husband, and the non-member spouse as the wife, as was the case of the Callaways.

bound as a party to, any judicial proceedings to readjust the partnership items at the partnership level. *See* I.R.C. §§ 6226(d), 6228(a)(4)(B); *cf.* Tax Ct. Rules 245(b), 247(a) *reprinted following* 26 U.S.C.A. § 7453.

One such regulation promulgated under the Secretary's authority pursuant to section 6231(c)(1)(E), provides that, when the estate of a deceased partner files a request for prompt assessment, its partnership items convert to non-partnership items:

> The treatment of items as partnership items with respect to a partner on whose behalf a request for prompt assessment of tax under section 6501(d) is filed will interfere with the effective and efficient enforcement of the internal revenue laws. Accordingly, partnership items of such a partner arising in any partnership taxable year ending with or within any taxable year of the partner with respect to which a request for a prompt assessment of tax is filed shall be treated as nonpartnership items as of the date that the request is filed.

Temp. Treas. Reg. § 301.6231(c)–8T. As discussed below, it is undisputed that the effect of this regulation was to convert all the partnership items of the estate of James Callaway to nonpartnership items, as of the date his estate requested prompt assessment. As a consequence, the deficiency procedures of subchapter B applied to the assessment of taxes attributable to those items, *see* I.R.C. § 6230(a)(2)(A)(ii), and a shorter statute of limitations for assessing any tax attributable to those items was triggered pursuant to I.R.C. § 6229(f)(1). At issue is the effect of this conversion on the procedures and limitations periods that applied to assessments against Elizabeth Callaway of taxes attributable to those same partnership losses as taken into account on the Callaways' joint returns for 1986–1988.

Against this statutory and regulatory background, we now turn to the facts.

### B. Facts.

The facts were stipulated or are otherwise undisputed. Elizabeth Callaway, the taxpayer, is the widow of James Callaway (sometimes "decedent"), who died in 1990. During the taxable years 1986, 1987, and 1988, James was a limited partner in a Pennsylvania limited partnership known as Mountain View Mall Associates ("Mountain View"). Elizabeth was never a partner in Mountain View. Nor did Elizabeth at any time own a joint interest in James's partnership interest, whether by way of tenancy in common, joint tenancy, tenancy by the entirety, or otherwise. Elizabeth and James were domiciled in New York, which is not a community property state. *See, e.g., Miller v. Miller,* 22 N.Y.2d 12, 290 N.Y.S.2d 734, 237 N.E.2d 877, 879 (1968) ("The state of New York ... has not adopted a community property system.") (quoting *Hemingway v. McGehee (In re Estate of Crichton),* 20 N.Y.2d 124, 281 N.Y.S.2d 811, 228 N.E.2d 799, 806 (1967)). Accordingly, Elizabeth had no ownership interest in James's partnership interest.

Elizabeth and James filed joint federal income tax returns. *See* I.R.C. § 6013(a). For each of the taxable years 1986, 1987 and 1988, their joint income tax returns reported and took into account James's distributive share of the losses reported on Mountain View's partnership returns for the same years. Absent an extension, the statute of limitations for the assessment of additional taxes attributable to the Callaways' *nonpartnership* items for those taxable years expired on October 15, 1990, October 24, 1991 and April 15, 1992, respectively. *See* I.R.C. § 6501(a), (n)(2); *cf. id.* § 6229(a).

For these taxable years, Mountain View timely filed its information return, pursuant to I.R.C. § 6031, on January 30, 1987, March 15, 1988 and February 28, 1989, respectively. Absent extension agreements, the statute of limitations for assessing any tax attributable to James's distributive share of Mountain View partnership

items would have expired on April 15 of 1990, 1991 and 1992 for taxable years 1986, 1987 and 1989 respectively. *See* I.R.C. § 6229(a). However, on July 22, 1989, July 29, 1991 and November 26, 1991, the Mountain View TMP and the IRS executed agreements to extend indefinitely the statute of limitations on Mountain View's tax returns.[7] *See* I.R.C. § 6229(b). These agreements were binding on all Mountain View partners, but only with respect to their distributive share of Mountain View partnership items. *See id.*

On December 8, 1990, James died. Elizabeth was appointed the executrix of his estate.

On February 5, 1991, the IRS mailed an NBAP to James with respect to Mountain View's 1988 tax year. The IRS claims it mailed NBAPs to James with respect to Mountain View's 1986 and 1987 taxable years.[8]

On December 23, 1991, acting on her own behalf and as the executrix of James's estate, Elizabeth mailed three letters to the IRS Service Center in Brookhaven, New York. The first letter—of crucial importance in these proceedings—was a request on behalf of James's estate for a prompt assessment, pursuant to I.R.C. § 6501(d), of the estate's outstanding income tax liabilities for the taxable years 1986, 1987 and 1988. It is undisputed that this request for prompt assessment converted the partnership items of James's estate to nonpartnership items, *see* I.R.C. § 6231(b)(1)(D), (c); Temp. Treas. Reg. § 301.6231(c)-8T, thereby requiring the IRS to determine deficiencies attributable to those items under the procedures of subchapter B, *see* I.R.C. § 6230(a)(2)(A)(ii), and shortening the limitations period for assessing taxes attributable to those items, *see id.* § 6229(f).[9] Although the IRS now concedes that this letter was a valid request for prompt assessment, because it initially believed that the request was invalid, it failed to take account of the consequences of the conversion of the estate's partnership items at the time the request was filed.[10]

The second letter included three checks in the amounts of $90,635, $48,846 and $8,439, clearly designated as deposits in the nature of cash bonds[11] respecting joint tax liabilities of Elizabeth and the estate for 1986, 1987, and 1988 respectively.[12]

7. While we note that the agreement indefinitely extending the Mountain View statute of limitations for taxable year 1987 was executed after the section 6229(a) limitations period for that year had run (on April 15, 1991) and therefore was not entered into "before the expiration of [the section 6229(a)] period," I.R.C. § 6229(b)(1)(B), we nonetheless assume for our purposes that this agreement was binding on all Mountain View partners.

8. Taxpayer claimed that these NBAPs were never sent. Because of this failure of notice, she argues that she was entitled to elect to have partnership items treated as nonpartnership items. *See* I.R.C. § 6223(e)(3)(B). We do not reach this argument.

9. As discussed below, while the IRS concedes that James's statute of limitations had expired before any of the deficiencies or penalties at issue were assessed, it misconstrues the relationship between Code sections 6501(d) and 6229(f) when it argues that the limitations period expired on June 23, 1993.

10. The IRS contended initially that the request was invalid because it had been filed before the final Estate Tax Return (Form 706). However, because the request for prompt assessment related to James's 1986, 1987 and 1988 *income* tax returns, and because it was filed after those returns, *see* I.R.C. 6501(d); Treas. Reg. § 301.6501(d)-1(b), it was valid, as the IRS now concedes. The date the estate tax return is filed is not relevant to this inquiry; a taxpayer may not request prompt assessment of estate taxes. *See* I.R.C. § 6501(d).

11. Payments "designated in writing as a deposit in the nature of a cash bond" stop the running of interest on any amount subsequently assessed as a deficiency. Rev. Proc. 84–58, 1984–2 C.B. 501, 502, 503. Such a deposit is not subject to a claim for credit or refund as an overpayment; the taxpayer may request its return at any time before the IRS is entitled to assess the tax; and it will be returned without interest. *See id.* at 502.

12. The third letter was, *inter alia,* an attempted election under I.R.C. § 6223(e)(3)(B) to have partnership items treated as nonpartnership items on account of the Commissioner's

Having completed the partnership audit, on October 5, 1992, the IRS issued an FPAA notice to the Mountain View TMP determining adjustments to the partnership returns for the taxable years 1986, 1987, 1988, see I.R.C. § 6223(a)(2), and disallowing losses claimed in each of those years. The IRS mailed copies of these FPAAs to the Callaways. The Mountain View TMP did not contest this administrative adjustment. See I.R.C. § 6226(a). On March 3, 1993, a Mountain View notice partner other than the TMP timely filed a petition for readjustment contesting these FPAAs with the United States Court of Federal Claims. See I.R.C. § 6226(b). On July 6, 1995, the Court of Federal Claims dismissed this action pursuant to a stipulation for dismissal. That dismissal operated as the court's decision that the adjustments proposed in the FPAA were correct. See I.R.C. § 6226(h). This decision became final 60 days later, on September 4, 1995.

Meanwhile, in August and September 1993—no doubt recognizing that the request for prompt assessment was valid, with the effect that James's distributive share of the partnership items had converted into nonpartnership items—the IRS entered "precautionary" assessments against the Callaways. These assessments, in the amounts of $77,384, $41,981 and $6,541, were for the additional taxes attributable to James's distributive shares of the Mountain View losses that the FPAA had determined should be disallowed for 1986, 1987 and 1988, respectively.[13] The IRS posted to the Callaways' accounts the amounts remitted as cash bonds on December 23, 1991.[14]

Once the decision of the Court of Federal Claims became final, the IRS adjusted the Mountain View partnership return to reflect the adjustments of the FPAA. The IRS then assessed deficiencies against the individual Mountain View partners by computational adjustment. Accordingly, in July 1996, a computational adjustment was made to the Callaways' accounts. The IRS abated the "precautionary" assessments entered in August and September 1993, and then entered identical assessments against the Callaways' accounts.

On August 5, 1996, the IRS issued notices of deficiency to the estate and Elizabeth determining various additions to tax, including penalties for delinquent filings of returns, negligence and valuation overstatements for the taxable years 1986, 1987 and 1988. Because these additions to tax were with respect to taxable years ending before August 5, 1997, they were treated as affected items requiring partner level determinations. Therefore, deficiency procedures under subchapter B were required and followed. See I.R.C. § 6230(a)(2)(A)(i) (as in effect for partnership taxable years ending before August 5, 1997).

## C. Proceedings Below.

On September 11, 1996, James's estate and taxpayer Elizabeth (the "original petitioners") timely filed a petition for redetermination, thereby invoking the jurisdiction of the Tax Court. See I.R.C. § 6214. On November 14, 1996, they moved to restrain collection of the underlying tax deficiencies attributable to the disallowance of James's distributive shares of Mountain View's

---

alleged failure to provide timely notice as required by section 6223(a). Taxpayer concedes that the form and timing of this election did not comply with the requirements imposed under the Treasury regulations. See Temp. Treas. Reg. § 301.6223(e)–2T(c)(2). Nonetheless, she has argued in the alternative, that it effected a valid election. Because we hold in favor of the taxpayer on other grounds, we need not reach this argument.

**13.** The decedent's distributive shares of the disallowed losses were $171, 535, $106, 902 and $22,903 in years 1986, 1987, and 1988 respectively. These figures were exactly those that were determined in the administrative adjustment finally concluded on September 4, 1995.

**14.** As discussed below these assessments, at least with respect to Elizabeth, were inconsistent with the position the IRS now asserts.

losses. The Tax Court denied this motion on the ground that its jurisdiction was limited to a redetermination of additions to tax determined in the affected items notices of deficiency. *See Callaway v. Commissioner,* 75 T.C.M. (CCH) 1956, 1958, 1998 WL 102440 (1998). However, in its response papers to this motion, the Commissioner conceded that all assessments entered against James's estate were untimely. The Commissioner conceded that the valid request for prompt assessment filed on December 23, 1991: (1) caused decedent's Mountain View partnership items to convert immediately into nonpartnership items, *see* I.R.C. § 6231(c)(2); Temp. Treas. Reg. § 301.6231(c)–8T; and (2) triggered an accelerated statute of limitations, under which the IRS had until June 23, 1993 to assess any deficiencies attributable to decedent's distributive shares of Mountain View's disallowed losses, *see* I.R.C. § 6501(d); *but cf. id.* § 6229(f) (providing that, on these facts, the limitations period expired on December 23, 1992). *See Callaway,* 75 T.C.M. (CCH) at 1958 & n. 3.

On March 10, 1998, the Tax Court ruled on the original petitioners' motion for summary judgment. As to James's estate, the Tax Court held that because the request for prompt assessment had converted his partnership items into nonpartnership items, the determination of his tax liability for such items was excepted from TEFRA's unified partnership audit and litigation procedures pursuant to section 6230(a)(2)(A)(ii). *See Callaway,* 75 T.C.M. (CCH) at 1960. The court therefore found the notices of deficiency for affected items invalid as to James's estate, and dismissed the case against James's estate for lack of jurisdiction. It denied as moot the estate's summary judgment motion. *See id.* (relying on *Crowell v. Commissioner,* 102 T.C. 683, 691–92, 1994 WL 151303 (1994)).

As to Elizabeth, relying in part on *Dubin v. Commissioner,* 99 T.C. 325, 334, 1992 WL 220119 (1992), the Tax Court held that her partnership items did not convert to nonpartnership items when decedent's partnership items converted to nonpartnership items pursuant to Temp. Treas. Reg. § 301.6231(c)–8T. *See Callaway,* 75 T.C.M. (CCH) at 1961–62.[15] The court therefore concluded that the notices of deficiency for affected items were valid insofar as they issued to Elizabeth and that they had been issued to her before her statute of limitations had run. *See id.* at 1963.

After the order entered denying taxpayer summary judgment, the parties settled certain issues by agreement, pursuant to which a stipulated decision entered on November 17, 1998 preserving this issue for appeal. Final judgment was entered, and this appeal followed.

## DISCUSSION.

■ We review the Tax Court's legal conclusions *de novo* and its factual findings for clear error. *See* I.R.C. § 7482(a)(1) ("The United States Courts of Appeals ... shall ... review the decisions of the Tax Court ... in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury"); *see also Texasgulf, Inc. and Subsidiaries v. Commissioner,* 172 F.3d 209, 214 (2d Cir.1999). In particular, "[w]e owe no deference to the Tax Court's statutory interpretations, its relationship to us being that of a district court to a court of appeals, not that of an administrative agency to a court of appeals." *Exacto Spring Corp. v. Commissioner,* 196 F.3d 833, 838 (7th Cir.1999) (Posner, *C.J.*); *cf. Baizer v.*

---

**15.** It held further that the third letter Elizabeth mailed on December 23, 1991 was not valid as an election to have partnership items treated as nonpartnership items pursuant to I.R.C. § 6223(e)(3)(B). *See Callaway,* 75 T.C.M. (CCH) at 1963. Lastly, it ruled that the third letter was also ineffective to terminate the TMP's authority under section 6229(b)(1)(B) to extend limitations periods for the partnership for the years in issue. *See id.* We need not reach these arguments on appeal.

*Commissioner*, 204 F.3d 1231, 1233 (9th Cir.2000) ("Although a presumption exists that the tax court correctly applied the law, no special deference is given to the tax court's decisions.").

The issue is whether, on the filing of the request for prompt assessment on behalf of James' estate, the Mountain View tax items taken into account on the Callaways' joint returns were converted from partnership items into nonpartnership items with respect to James alone or with respect to Elizabeth also.

*A. When James's partnership items converted into nonpartnership items those same partnership items necessarily became nonpartnership items with respect to Elizabeth*

We conclude that because the only partnership items taken into account in the Callaways' joint returns were James's partnership items held by him as separate property, when all of his partnership items converted into nonpartnership items, all the Mountain View items reported in the joint returns necessarily became nonpartnership items with respect to Elizabeth also.

*1. Before the request for prompt assessment.*

It is undisputed that James's partnership interest was held as separate property. Only James was a partner as that term is defined in subtitle A. *See* I.R.C. § 761(b) ("For purposes of this subtitle, the term 'partner' means a member of a partnership."); *see also id.* § 7701(a)(2). Only James owned an interest in his distributive share of the Mountain View tax items and only he was required to take those items into account, pursuant to Code section 702(a). That section requires that "[i]n determining his income tax, each partner shall take into account separately his distributive share of the partnership's ... items of income, gain, loss, deduction, or credit...." I.R.C. § 702(a); *see also* Treas. Reg. § 1.702–1(a). Whether clas-

sified as "partnership items," I.R.C. § 6231(a)(3), or "nonpartnership items," *id.* § 6231(a)(4), there is no doubt that James's distributive shares of the Mountain View tax items remained at all times his separate property. In particular, the Mountain View losses at issue in this case were his items.

We turn now to the classification of those items as either "partnership items" or "nonpartnership items" for the purposes of subtitle F. Before the filing for prompt assessment, it is undisputed that James's distributive shares of the various Mountain View tax items were classified as "partnership items." The Code defines "partnership item" to mean:

> with respect to a partnership, any item required to be taken into account for the partnership's taxable year under any provision of subtitle A to the extent regulations prescribed by the Secretary provide that, for purposes of [Subtitle F], such item is more appropriately determined at the partnership level than at the partner level.

I.R.C. § 6231(a)(3). As prescribed by the Treasury regulations, the term includes "[t]he partnership aggregate and *each partner's share of* ... [i]tems of income, gain[,] *loss*, deduction, or credit of the partnership." Treas. Reg. § 301.6231(a)(3)–1(a)(1)(i) (emphases added). "[E]ach partner's share" refers to the distributive share of items that a partner must take into his account, pursuant to Code section 702(a). Here, it is undisputed that only James owned such a "share of" the Mountain View partnership items. It is also evident from the regulation that tax items are classified as partnership items both with respect to the partnership ("the partnership aggregate") and with respect to "each partner's share of" those items. In this manner, the regulatory scheme accommodates the concept of conversion: a "partner's share of" any partnership item may subsequently be treated as nonpartnership item, *see* I.R.C. § 6231(b)(1), even though such an item, in

the aggregate, remains "more appropriately determined at the partnership level." Treas. Reg. § 301.6231(a)(3)–1(a)(1)(i).

In sum, as is undisputed, at the time they were originally taken into account on his tax returns, James' distributive shares of the Mountain View tax items were both (1) his separate property, and (2) classified as "partnership items."

We next consider James's distributive shares of Mountain View tax items with respect to Elizabeth. First, Elizabeth owned no interest in or "share of" these items. Treas. Reg. § 301.6231(a)(3)–1(a)(1). The Mountain View tax items produced tax consequences for her solely through the Callaways' decision to file joint returns. Had Elizabeth filed separately from James, Elizabeth would have taken no share of James's distributive shares of Mountain View tax items into account in computing her tax liability for the years at issue. *Cf. United States v. National Bank of Commerce*, 472 U.S. 713, 722, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985) (federal tax law " 'creates no property rights but merely attaches consequences, federally defined, to rights created under state law' ") (quoting *United States v. Bess*, 357 U.S. 51, 55, 78 S.Ct. 1054, 2 L.Ed.2d 1135 (1958)).

■ The filing of joint tax returns does not alter property rights between husband and wife. *See Zeeman v. United States*, 395 F.2d 861, 865 (2d Cir.1968). In particular, the filing of a joint return does not have the effect of converting the income of one spouse into the income of another. *See, e.g., McClelland v. Massinga*, 786 F.2d 1205, 1210 (4th Cir.1986) ("[T]he mere filing of a joint tax return by a husband and wife does not render the property taxed or the tax paid joint property."). The Callaways' decision to file jointly, *see* I.R.C. § 6013(a), had no effect on James's separate ownership of his Mountain View items.

However, because the Callaways filed joint returns, their tax was computed on their aggregate income. *See* I.R.C. § 6013(d)(3); Treas. Reg. 1.6013–4(b) ("Although there are two taxpayers on a joint return, there is only one taxable income."). Liability for that tax was joint and several. *See* I.R.C. § 6013(d)(3). James took his distributive shares of Mountain View tax items into joint account in computing the Callaways' aggregate income. *See* I.R.C. § 702(a). Therefore, because Elizabeth's "income tax liability . . . [was] determined . . . in part by taking into account . . . partnership items of the partnership," she was a "partner" "[f]or purposes of" subchapter C. I.R.C. § 6231(a)(2)(B); Temp. Treas. Reg. § 301.6231(a)(2)–1T(a). However, Elizabeth's status as a partner "[f]or purposes of [subchapter C]" did not make her a "member of the partnership," *see* I.R.C. § 761(b); nor did it transfer to her a share of James's distributive share of the Mountain View items; nor did it effect any change in the classification of those items as either "partnership items" or "nonpartnership items." Her status as a partner simply gave her certain notice and participation rights in any partnership proceedings under TEFRA—when those procedures applied. *See* Temp. Treas. Reg. § 301.6231(a)(2)–1T(a).

Most importantly, Elizabeth's status as a partner arises only by operation of subchapter C and only "for purposes of [subchapter C]." I.R.C. § 6231(a). It is a consequence of the application of that subchapter. The issue whether subchapter B or subchapter C applied to the disputed assessments—that is, *the* issue in this case—does not turn on Elizabeth's status as a partner under TEFRA. It turns on the classification, for the purposes of subtitle F, of the items to which the tax deficiencies were attributable. If those items were classified as partnership items, subchapter C would apply. *See* I.R.C. §§ 6221, 6211(c), 6216(4). If those items were classified as nonpartnership items, then subchapter C *could* not apply. *See, e.g.,* I.R.C. § 6226(f); *Maxwell*, 87 T.C. at 788. The Commissioner's argu-

ment accepted by the Tax Court assumes its own conclusion. *See Callaway*, 75 T.C.M. (CCH) at 1960 ("[N]otwithstanding the conversion of decedent's partnership items to nonpartnership items ... Mrs. Callaway was at all times treated as a Mountain View partner who was fully entitled to participate in partnership level proceedings."). Unless subchapter C still applies, the fact that Elizabeth Callaway is a "partner" "[f]or purposes of [that] subchapter," I.R.C. § 6231(a)(2)(B), is irrelevant.

We conclude that immediately before the request for prompt assessment: (1) all James's distributive shares of the Mountain View tax items (including the disputed losses) as taken into account in the Callaways' joint returns were James's separate property, *see* I.R.C. § 702(a); 6013(a); (2) all of those items were classified as partnership items; *see* I.R.C. § 6231(a)(3); Treas. Reg. § 301.6231(a)(3)–1(a)(1)(i);[16] and (3) any adjustment to the tax treatment of those partnership items had to be determined under subchapter C, *see* I.R.C. § 6221; Temp. Treas. Reg. § 301.6221–1T(a).

For so long as James's distributive shares of the Mountain View tax items, as taken into account in their joint returns, were characterized as "partnership items," they were necessarily partnership items with respect to Elizabeth. However, as we conclude below, when James's distributive share of the Mountain View tax items converted into nonpartnership items, they necessarily converted into nonpartnership items with respect to Elizabeth.

### 2. *The results of the conversion.*

A " 'nonpartnership item' means an item which is (or is treated as) not a partnership item." I.R.C. § 6231(a)(4). It is the

parenthetical that is important. Pursuant to section 6231(c)(2), the Secretary has the authority to provide by regulation that certain items otherwise treated as partnership items are to be treated as nonpartnership items. It is not disputed that an individual "partner's share of" such items, Treas. Reg. § 301.6231(a)(3)–1(a)(1), can be treated as "not a partnership item." I.R.C. § 6231(a)(4). The purpose of this is clear. By severing the partner in question from the partnership level proceedings, the Secretary seeks to meet what he has identified as "special enforcement considerations." I.R.C. § 6231(c)(1)(E). The conversion of the partnership items into nonpartnership items removes them from subchapter C proceedings and subjects them to the procedures of subchapter B. *See* I.R.C. § 6230(a)(2)(A)(ii). Because the tax treatment of his items is no longer subject to the subchapter C proceedings, a partner no longer has an interest in the outcome of those proceedings. By statute he is no longer a party to a judicial proceeding under section 6226 and loses his rights to participate in such an action. *See* I.R.C. §§ 6226(d), 6228(a)(4)(B); *cf.* Tax Ct. Rules 245(b), 247(a) *reprinted following* 26 U.S.C.A. § 7453. In the case of a partner filing in bankruptcy, the "special enforcement consideration" is the need to prevent the automatic stay imposed by the bankruptcy code, *see* 11 U.S.C. § 362, from staying the TEFRA proceedings against the other partners. *See Computer Programs Lambda, Ltd. v. Commissioner*, 89 T.C. 198, 204, 1987 WL 42563 (1987). In the case of a request for prompt assessment, the consideration is facilitating the timely wrapping up of the partner's estate, which requires the final determination of his income tax liability.

---

**16.** However, we distinguish taxpayer's confusing conclusion that "James Callaway's partnership items were, at all times, nonpartnership items with respect to Elizabeth Callaway." We find that this statement fails to distinguish between the ownership of the distributive share of the Mountain View tax

items—a function of state property law—and the classification of those items as either "partnership items" or "nonpartnership items"—a consequence of the federal law of tax procedure. *Cf. National Bank of Commerce,* 472 U.S. at 722, 105 S.Ct. 2919.

And that is the relevant concern here. Pursuant to Temp. Treas. Reg. § 301.6231(c)–8T, when his estate filed for prompt assessment, *see* I.R.C. § 6501(d), the distributive shares of James's Mountain View tax items were converted from partnership items into nonpartnership items. *See* I.R.C. § 6231(b)(1)(D), (c)(1)(E).

In relevant part the prompt assessment regulation states that the "partnership items of . . . a partner [on whose behalf a request for prompt assessment of tax under section 6501(d) is filed] . . . shall be treated as nonpartnership items . . ." Temp. Treas. Reg. § 301.6231(c)–8T. Applying this instruction to the facts before us, James's distributive shares of the Mountain View tax items for the years in question converted from partnership items into nonpartnership items. Because the only Mountain View tax items taken into account on the Callaways' joint returns were James Callaway's items, held as separate property, it follows that all such items converted from partnership items into nonpartnership items. In our view, these items necessarily became nonpartnership items with respect to Elizabeth. The items had been partnership items with respect to her, only because James was required to take them into account and he had taken them into account in a joint return filed with Elizabeth. As a consequence, tax deficiencies assessed against either James or Elizabeth attributable to these items were to be determined by following the notice of deficiency procedures of subchapter B. *See* I.R.C. § 6230(a)(2)(A)(ii).

Our interpretation of the effect of the prompt assessment regulation is not only consistent with its text—which instructs that James's distributive share of the Mountain View tax items converted from partnership items into nonpartnership items—but also comports with the overall structure and purpose of the TEFRA provisions. The position adopted by the Tax Court does not.

The position of the Tax Court below creates the anomaly that a single share of tax items taken into account on a single return will be treated simultaneously as a "partnership item" and a "nonpartnership item." Under this reading, James's shares of disputed Mountain View losses, as reported in the Callaways' joint returns, would be treated as nonpartnership items with respect to James and partnership items with respect to Elizabeth. Consequently, the procedures of subchapter B would apply to assessments against James, while the procedures of subchapter C would apply to assessments against Elizabeth, notwithstanding that any deficiencies were attributable to the identical items. This result contradicts the language and structure of the Code, which make quite clear that partnership item and nonpartnership item are mutually exclusive classifications, *see* I.R.C. § 6231(a)(4) (" 'nonpartnership item' means an item which is . . . not a partnership item"), that trigger mutually exclusive audit and assessment procedures under subchapter C and subchapter B respectively. *See* I.R.C. §§ 6216(4), 6221, 6230(a)(2)(A)(ii). The legislative history is clear that this strict dichotomy provided the fundamental structure of the TEFRA provisions. *See* H.R. Conf. Rep. 97–760, at 611. And the Tax Court itself has consistently noted this foundational structure. *See, e.g., Maxwell,* 87 T.C. at 788 ("It is evident both from the *statutory pattern and from the Conference Report* that Congress intended administrative and judicial resolution of disputes involving partnership items to be separate from and independent of disputes involving non-partnership items.") (emphasis added). In the Callaways' case, there is only one separate interest in the disputed Mountain View losses, taken into account in one tax return. *Compare Dubin,* 99 T.C. at 326 (wife had half-share in husband's distributive shares and therefore owned her own share of items); *Gillilan v. Commissioner,* 66 T.C.M. (CCH) 398, 1993 WL 311552 (1993) (same fact pattern). The position

that the Commissioner advocates would, in effect, allow identical items to be audited simultaneously in both subchapter B and subchapter C. The structure and language of the Code do not support such a reading.

Both the Tax Court and the Commissioner on appeal place great weight on the fact that Elizabeth was a "partner" for the purposes of subchapter C. *See* I.R.C. § 6231(a)(2)(B); Temp. Treas. Reg. § 301.6231(a)(2)–1T(a). But that argument proves too much. The same, of course, was true of James. Section 6231(a)(2)(A) provides, "For purposes of [subchapter C] ... [t]he term 'partner' means a partner in the partnership." For the tax years in dispute, it is certain that James remained a partner in the Mountain View partnership, notwithstanding that his estate requested prompt assessment. Yet it is equally certain that tax deficiencies attributable to his distributive share of the Mountain View tax items ceased to be determined under subchapter C when those partnership items converted into nonpartnership items. *See* I.R.C. § 6230(a)(2)(A)(ii). Because he no longer had an interest in the outcome of any judicial proceeding under subchapter C, he was no longer bound as party to, nor was he entitled to participate in, those proceedings. *See* I.R.C. §§ 6226(d), 6228(a)(4)(B); *cf.* Tax Ct. Rules 245(b), 247(a) *reprinted following* 26 U.S.C.A. § 7453. If subchap-

ter C no longer applied to assessments against James, notwithstanding his status as a partner, once his distributive share of the Mountain View losses converted into nonpartnership items, there is no reason why deficiencies attributable to the same tax items should be assessed against Elizabeth under subchapter C solely by reason of her status as a partner under that subchapter. It is the classification of the tax items taken into account in the Callaways' joint return as either partnership items or nonpartnership items that determines the application of subchapter C—not the status of the taxpayer as a "partner."[17]

Because the only partnership items taken into account on the Callaways' joint return were James's partnership items, and because it is undisputed that all of his partnership items converted into nonpartnership items, we conclude that all of the partnership items reported on the Callaways' returns converted into nonpartnership items. We therefore conclude that after December 23, 1991, to determine deficiencies attributable to James's distributive share of Mountain View tax items, as taken into account in the Callaways' joint returns, and to assess those deficiencies against either spouse, the Commissioner was required to proceed under subchapter B.

Of course, the conversion of James' partnership items into nonpartnership items

---

**17.** What is more, there is a strong argument that when James's distributive share of the partnership items converted into nonpartnership items, Elizabeth ceased to qualify as a "partner" under section 6231(a)(2)(B) because her tax liability was no longer determined by taking into account partnership items. *See* I.R.C. § 6231(a)(2)(B). Such a reading draws strong support from the fundamental structure and logic of the TEFRA statute. The textual argument remains ambiguous, however. The section 6231(a)(2)(B) definition of partner refers to "partnership items of the partnership" and, while James Callaway's distributive shares of the items, as taken into account in the Callaways' joint returns, had converted to nonpartnership items, those items remained "partnership items *of the partnership.*" (Emphasis added). This might argue that Elizabeth was still a

partner—although, as discussed, this would not itself dictate that deficiencies were properly assessed against her under subchapter C. A strong contrary textual argument may be made, however. The phrase "partnership items of the partnership" is a tautology—by definition any partnership item is a partnership item of a partnership. Either it is "useless surplusage," *J.C. Penney Co. v. Commissioner,* 312 F.2d 65, 72 (2d Cir.1962) (Friendly, *J.*), or the phrase "of *the* partnership" (emphasis added) was inserted to ensure that the partnership items in question are those of the specific source partnership rather than of another partnership. However, since we do not rely on the reading that Elizabeth ceased to be a partner, and neither party raised this issue on appeal, we leave these arguments for another day.

and the corresponding application of subchapter B effected a purely procedural change. *See Phillips v. Commissioner*, 106 T.C. 176, 183, 1995 WL 814744 (1995). It did not alter the Callaways' substantive tax obligations. It did not prevent the IRS from determining deficiencies under subchapter B nor from assessing them against *either* spouse. Indeed, as we discuss below, it would not have prevented the assessment of deficiencies against Elizabeth after the expiration of James's section 6501(d) limitations period had a longer limitations period remained open with respect to assessments against her and had the IRS taken timely action within that period. *Accord Garfinkel v. Commissioner*, 67 T.C. 1028, 1032, 1977 WL 3618 (1977); Rev. Rul. 72–338, 1972–2 C.B. 641. Nor did it prevent the IRS from utilizing information from the TEFRA audit in determining the Callaways' deficiencies. *See Phillips*, 106 T.C. at 178, 183 (where partner's distributive share converted into nonpartnership items determination of deficiency under subchapter B may rely on factual analysis undertaken in TEFRA audit).

*B.   The statute of limitations against assessments attributable to James Callaway's distributive share of the Mountain View items ran on December 23, 1992.*

We disagree with the Commissioner's contention and the Tax Court's conclusion that by operation of section 6501(d) the statute of limitations on assessment of taxes attributable to the Mountain View losses taken into account on the Callaways' joint return did not expire until June 23, 1993. That analysis ignores the effect of section 6229(f) and misconstrues section 6501(d) and the regulations promulgated

thereunder. We conclude that the limitations period expired on December 23, 1992.

On filing of a valid request for prompt assessment, the limitations period runs for a maximum of eighteen months on any return filed prior to the request, "but not after the expiration of 3 years after the return was filed." I.R.C. § 6501(d).[18] The regulations make clear that "the request *does not extend the time* within which an assessment may be made." Treas. Reg. § 301.6501(d)–1(b) (emphasis added).

Here, immediately before the filing of the section 6501(d) request for prompt assessment, only two limitations periods remained open with respect to the Callaways' tax returns. First, the ordinary limitations period on the Callaways' 1988 joint return remained open until April 15, 1992—the date three years after that return was filed. *See* I.R.C. § 6501(a).[19] Second, the limitations period remained open against assessments attributable to James Callaway's distributive share of the Mountain View partnership items, by operation of the agreements executed by the TMP and the IRS. Those agreements bound both James and Elizabeth. *See* I.R.C. § 6229(b)(1)(B). However, these agreements controlled only the limitations periods for assessing taxes attributable to partnership items. *See* I.R.C. § 6229(a), (b). Therefore, when James Callaway's distributive share of the Mountain View items, as taken into account in the Callaways' joint returns, converted from partnership items to nonpartnership items, the TMP's agreements ceased to control. *See id.*

It does not follow, however, as the IRS has assumed, that by operation of section 6501(d) an eighteen month limitations period began to run on the conversion of the

---

**18.** Section 6501(a) makes it clear that the "return" in question is the individual taxpayer's and not the partnership's return: "For purposes of this chapter, the term 'return' means the return required to be filed by the taxpayer (and does not include a return of any person from whom the taxpayer has received

an item of income, gain, loss, deduction or credit)."

**19.** The limitations periods for the 1986 and 1987 returns had run and could not be reopened by operation of section 6501(d). *See* Treas. Reg. § 301.6501(d)–1(b).

partnership items. Section 6501(d) sets only a maximum time for assessment. *See* Treas. Reg. § 301.6501(d)–1(b). To prevent further assessments from being immediately time-barred on conversion, the Code provides that when partnership items are converted into nonpartnership items, "the period for assessing any tax imposed by subtitle A which is attributable to such items ... shall not expire before the date which is 1 year after the date on which the items become nonpartnership items." I.R.C. § 6229(f)(1). It is section 6229(f)(1), rather than section 6501(d), that provides the post-conversion limitations period in this case.[20] This limitations period also applies to additions to tax and penalties that arise with respect to any tax imposed under subtitle A. *See* I.R.C. § 6229(g).

We conclude that the period for assessing tax attributable to the distributive share of Mountain View losses taken into account on the Callaway's 1986, 1987 and 1988 tax returns expired on December 23, 1992. As a consequence, we hold that the "precautionary" assessments entered against the Callaways in July and August 1993, the computational adjustments entered in July 1996 and the affected items notice of deficiencies issued in August 1996 were all time-barred.

The Commissioner contends that it is well-settled law that spouses with joint and several liability may be subject to different limitations periods. *See, e.g., Tallal v. Commissioner*, 77 T.C. 1291, 1295–96, 1981 WL 11311 (1981) (holding where spouses filed joint return, and husband signed extension of statute of limitations and wife did not, IRS was barred from assessing tax against wife but not husband); *Garfinkel*, 67 T.C. at 1032 (period of limitation on assessment against the surviving party to a joint return is not affected where the decedent's representative requests prompt assessment); Rev. Rul. 72–338 (same). Undoubtedly this is true, but it is irrelevant on these facts.

The limitations period on assessments against Elizabeth did not expire because the limitations period on assessments against James expired. Their limitations periods expired simultaneously because as of December 23, 1991—when James's distributive share of the Mountain View partnership items converted into nonpartnership items—the limitations periods with respect to assessments against either spouse attributable to those items remained open for a minimum of one year, *see* I.R.C. § 6229(f), and no longer period remained open with respect to either spouse. Had a longer period been open with regard to Elizabeth, but not James, and had the IRS acted timely to assess Elizabeth within that period, she would

**20.** To see how these various provisions fit together, assume that James Callaway had died on December 8, 1989 (a year earlier than he did) and that his estate had filed a request for prompt assessment the day after his death, on December 9, 1989. To simplify matters, we focus only on the 1988 taxable year, for which the Callaways filed their joint return on April 15, 1989. Under section 6229(f) the limitations period on assessments attributable to the Mountain View losses (now treated as nonpartnership items) could not have expired *sooner* than December 9, 1990. Under section 6501(d) the limitations period on assessments against decedent's estate could not have extended beyond the earlier of the date 18 months from the filing of the request or 3 years from the filing of the 1988 return—on these facts, June 9, 1991. As to assessments against Elizabeth Callaway, under section 6501(a) these would still have been timely if made within three years from the filing of the 1988 return—on these facts, April 15, 1992. Therefore, under this fact scenario, section 6229(f) does not provide the limiting date for either spouse: James Callaway's limitation period is set by section 6501(d) and Elizabeth Callaway's period is set by section 6501(a). *Accord Garfinkel* 67 T.C. at 1032; Rev. Rul. 72–338 ("[W]here the executor of the estate of one spouse requests prompt assessment of the tax, the period of limitation on assessment as to the other spouse on the joint return is the three-year period prescribed by section 6501(a) of the Code, rather than the 18 month period prescribed by section 6501(d)."). Of course, the Commissioner would still be required to proceed under subchapter B with respect to both spouses.

have been liable for deficiencies attributable to the Mountain View losses taken into account on their joint tax returns, notwithstanding the running of the statute as to James. Our holding does not contradict the principle that spouses sharing joint liability may be subject to asymmetric limitations periods. That principle simply has no application on these facts.

The Commissioner's argument that the TEFRA proceedings tolled any statute of limitations on assessments against Elizabeth is misconceived. The filing of an FPAA tolls the limitations period on assessments attributable to partnership items for so long as administrative and judicial proceedings are pending and for one year after the adjustments become final. *See* I.R.C. § 6229(d). But again these provisions only apply to assessments attributable to partnership items. In this case the FPAA was not issued until October 5, 1992—over nine months after the partnership items reported on the Callaways' returns had been converted into nonpartnership items, on December 23, 1991. The FPAA was not finalized until September 4, 1995. *See* Temp. Treas. Reg. § 301.6231(c)–3T (conversion under Temp. Treas. Reg. § 301.6231(c)–8T(a) effective anytime before FPAA is finalized). Further, neither James nor Elizabeth was bound as a party to the section 6226 judicial proceeding filed on March 3, 1993, because—as a consequence of the conversion of James's distributive share of the partnership items into nonpartnership items—neither spouse retained an interest in the outcome of that proceeding. *See* I.R.C. § 6226(d); *cf.* Tax Ct. Rules 245(b), 247(a) *reprinted following* 26 U.S.C.A. § 7453. In any event, that proceeding was brought after the section 6229(f) limitations period had run on December 23, 1992. Therefore, there is no merit to the Commissioner's claim that the limitations period remained open against Elizabeth because of pending subchapter C proceedings against Mountain View.

\* \* \* \* \* \*

We conclude that (1) as of December 23, 1991, when James Callaway's estate requested prompt assessment, all of James's Mountain View losses taken into account on the Callaways' joint returns for the taxable years in issue were converted from partnership items to nonpartnership items; (2) therefore, assessments of deficiencies attributable to those losses were subject to the deficiency procedures of subchapter B, not the TEFRA procedures of subchapter C; regardless whether the deficiencies were assessed against James or Elizabeth; and (3) the period of limitations for assessments of tax attributable to those losses against either Callaway spouse expired on December 23, 1992. Because both the 1993 "precautionary" assessments and the 1996 computational adjustments occurred after that date, and because neither complied with the deficiency procedures of subchapter B, they were both time-barred and procedurally invalid. It follows that the subsequent determination of additions to tax and penalties was also invalid.

## C. The pertinence of Dubin v. Commissioner.

Both the Tax Court below and the IRS rely on *Dubin v. Commissioner*, 99 T.C. 325, 1992 WL 220119 (1992), for the proposition that the conversion of one spouse's partnership items does not convert the partnership items of the other spouse. Assuming it was correctly decided, *Dubin* is distinguishable on its facts. We decline to extend it in the manner advocated by the Commissioner. Such an extension contradicts the basic structure of Chapter 63. Furthermore, even on its own facts, we doubt that *Dubin* was correctly decided.

At issue in *Dubin* was the effect of a regulation, also promulgated under the authority delegated to the Secretary by I.R.C. § 6231(c)(2), providing that the partnership items of a partner who files for bankruptcy will convert to nonpartnership items. *See* Temp. Treas. Reg.

§ 301.6231(c)–7T(a).[21]  *Dubin* concerned a joint-filing husband and wife. *See Dubin*, 99 T.C. at 326. Alan Dubin was a member of three partnerships. By operation of California's community property law, Alan and his wife Jewell owned joint interests in these partnerships. *See id.* at 326–27, 331. Because of this joint property interest, Jewell was treated as a partner for the purposes of subchapter C. *See* I.R.C. § 6231(a)(2)(B); Temp. Treas. Reg. § 301.6231(a)(12)–1T(a). Reasoning that the TEFRA regulations treated Jewell as a separate partner, and because only the partnership items of the "partner named as a debtor in bankruptcy" are "treated as nonpartnership items," the Tax Court held that the conversion of Alan's partnership items by reason of his status as a debtor in bankruptcy did not convert Jewell's partnership items. *Dubin*, 99 T.C. at 334.

In this case, the Tax Court reasoned that, just as the bankruptcy provision in *Dubin* converted only the partnership items of the spouse named in bankruptcy, the prompt assessment regulation converts only the partnership items of the decedent on whose behalf the section 6501(d) request is filed. *See Callaway*, 75 T.C.M. (CCH) at 1961.

Unlike Jewell Dubin, however, Elizabeth Callaway held no property interest in James's distributive share of the partnership items. The Tax Court below noted this distinction, but dismissed it in a conclusory manner:

Although the *Dubin* case involved the status of a taxpayer holding a joint partnership interest with her husband, whereas the instant case concerns the status of a taxpayer who filed a joint return with her husband, who held a separate partnership interest, we see no meaningful distinction between the con-

trolling statutory and regulatory provisions.

*Callaway*, 75 T.C.M. (CCH) at 1961.

We disagree. The distinction between the arrangement of the Callaways' and the Dubins' property interests is significant. Because Jewell Dubin owned a joint interest in her husband's membership interest, she owned a share of the partnership's tax items. Jewell was required to take her share of those items into account in determining her tax liability, whether she filed jointly or separately. *See* Treas. Reg. § 1.702–1(d). In short, she *owned* partnership items.

Applying the prompt assessment regulation in the manner the *Dubin* court applied the almost identical bankruptcy regulation supports our holding *on the facts of this case*. The *Dubin* court focused on the conversion of the partnership items "of" the partner named in bankruptcy. *See Dubin*, 99 T.C. at 334. Further, in *Gillilan v. Commissioner*, 66 T.C.M. (CCH) 398, 402, 1993 WL 311552 (1993), dealing with the same pattern of material facts as *Dubin* and speaking through the same judge, the Tax Court clarified that it is only the wife's "*share of* [the partnership's] losses" that remains a partnership item after her husband's share is converted. Our holding is consistent with the straightforward application of *Dubin* to the facts of this case, where James Callaway owned all of the losses and Elizabeth Callaway owned none. *Dubin* and *Gillilan* teach that Elizabeth's "share of" any partnership items would have remained unconverted, notwithstanding the conversion of her husband's share; but Elizabeth owned no such share. *Dubin* and *Gillilan* have no bearing on this case. In short, the difference between Jewell Dubin, who owned an interest in her husband's partnership items and Elizabeth Callaway, who did not, gives suf-

---

**21.** The regulation reads, in pertinent part:
[P]artnership items of [a partner named as a debtor in a bankruptcy proceeding] arising in any partnership taxable year ending on or before the last day of the latest taxable year of the partner with respect to which the United States could file a claim for income tax due in the bankruptcy proceeding shall be treated as nonpartnership items as of the date the petition naming the partner as debtor is filed in bankruptcy.

ficient reason not to extend the Dubin holding into the Callaway context.[22]

Having ruled as we do, we need not pass on the validity of *Dubin*'s reasoning, and do not do so. But having studied that ruling and the statute and regulations on which it is based, we note our doubts about its reasoning. As a matter of statutory interpretation, it seems to us strangely reasoned and wrongly decided.

Where a husband and wife own a joint interest in the partnership, the statutory scheme involves the interplay of two Code provisions. Under section 6231(a)(2), "[f]or purposes of [subchapter C]," a "partner" is defined as:

(A) a partner in the partnership, and

(B) any other person whose income tax liability ... is determined ... by taking into account ... partnership items of the partnership.

I.R.C. § 6231(a)(2). Under this provision, because each spouse *owns* a share of the member's distributive share of the partnership items and because each is required to take that share into account in computing his income tax liability, *see* I.R.C. § 702(a); Treas. Reg. § 1.702–1(d), a husband and wife owning a joint interest in a partnership will necessarily both qualify as partners, regardless whether the couple files joint or separate returns. Because each spouse is a "partner," each may participate in the partnership proceedings under subchapter C and thereby protect his

or her interest in the determination of taxes for which each will be liable.

On the other hand, Code section 6231(a)(12) instructs that:

Except to the extent otherwise provided in regulations, a husband and wife who have a joint interest in a partnership shall be treated as 1 person.

Because husband and wife share a joint interest in a *single* membership, this section recognizes the appropriateness, as a general rule, of treating the husband and wife as "1 person." Regardless of the arrangement of property rights between the spouses, from the perspective of the partnership, which is the focus of TEFRA, their interest constitutes but a single membership. It follows, for example, that notice given to the member-spouse—whose information will be provided on the partnership return—will serve as constructive notice to the non-member spouse. It also follows, as the Commissioner argued in *Dubin*, that the member's distributive share of partnership items should be treated as if it were held by "one person." In short, under this statutory rule the member's distributive share of partnership items is treated as a single set of partnership items.[23]

The pertinent regulation substantially restates these two statutory provisions and clarifies their application. *See* Temp. Treas. Reg. § 301.6231(a)(12)–1T.[24] Para-

---

**22.** Further, to extend *Dubin*, as the Tax Court did, produces an unworkable result within the TEFRA framework, as we have previously discussed. *Dubin* and *Gillilan* are technically possible because there are divided ownership interests in the partnership items. Therefore, it is possible to speak of one spouse's "share of" the partnership items converting into nonpartnership items while the other spouse's share remains unconverted, even on the same return. As we discuss, however, this was the result Congress intended to avoid in drafting section 6231(a)(12).

**23.** In *Gillilan* the Tax Court confirmed that it is "unquestionabl[e]" that "section 6231(a)(12), *if nowhere superseded*" would compel the result that the Commissioner ad-

vocated: "in that event, [a conversion] would apply to petitioner, as well as her husband, converting all partnership items to nonpartnership items." *Gillilan*, 66 T.C.M. (CCH) at 401 (emphasis added). In short, the legitimacy of *Dubin* rests on the persuasiveness of its reasoning that the statute has been superseded by the regulations. As set out below, we find that reasoning thoroughly unpersuasive.

**24.** In full Temporary Treasury Regulation § 301.6231(a)(12)–1T reads as follows:

(a) *In general.* For purposes of subchapter C of chapter 63 of the Code, spouses holding a joint interest in a partnership are treated as partners. Thus, both spouses are permitted to participate in administrative and judicial proceedings. The term "joint

graph (a) of that regulation—headed "In general"—applies the general statutory rule of section 6231(a)(2)(B) to a husband and wife holding a joint interest, confirming that each will be treated as a partner. *Compare* Temp. Treas. Reg. § 301.6231(a)(12)–1T(a) ("For purposes of subchapter C of chapter 63 of the Code, spouses holding a joint interest in a partnership are treated as partners.") *with* I.R.C. § 6231(a)(2)(B) (same result). Accordingly, paragraph (a) of this regulation clarifies that "[t]hus both spouses are permitted to participate in administrative and judicial proceedings." Temp. Treas. Reg. § 301.6231(a)(12)–1T(a). Next, paragraph (b)(1) of the regulation—also headed "In general"—implements the general rule of Code section 6231(a)(12) providing that "spouses holding a joint interest in a partnership shall be treated as one person." Temp. Treas. Reg. § 301.6231(a)(12)–1T(b)(1). *Compare* I.R.C. § 6231(a)(12) (same). Paragraph (b)(1) clarifies how this general rule applies to the notice provisions of Code section 6223 (relating to notice to partners of proceedings) and to the counting provisions of 6231(a)(1)(B) (relating to the exception for small partnerships). *See* Temp. Treas. Reg. § 301.6231(a)(12)–

1T(b)(1). Paragraph (b)(1) does not, however, purport to limit the application of the general statutory "one person" rule to only these circumstances. Indeed, paragraph (b)(1) expressly states that "[e]xcept as provided in paragraph (b)(2) of this section, the Service . . . may send *any* required notice to *either* spouse"—not only those arising under section 6223. Temp. Treas. Reg. § 301.6231(a)(12)–1T(b)(1) (emphasis added). Finally, paragraph (b)(2) of the regulation provides the limited regulatory exceptions to the general statutory rule envisaged by Code section 6231(a)(12). *Compare* Temp. Treas. Reg. § 301.6231(a)(12)–1T(b)(1) ("Except as provided in paragraph (b)(2) . . .") *with* I.R.C. § 6231(a)(12) ("Except to the extent otherwise provided in regulations . . .").[25]

The regulation thus confirms the statutory scheme. Under paragraph (a), a husband and wife owning a joint interest in a partnership are each treated as partners; each may therefore participate in the TEFRA proceedings that will determine their tax liability. At the same time, paragraph (b)(1) confirms that a husband and wife owning a joint interest in the partner-

interest" includes tenancies in common, joint tenancies, tenancies by the entirety, and community property.

(b) *Notice and counting rules*—(1) *In general.* Except as provided in paragraph (b)(2) of this section, for purposes of applying section 6223 (relating to notice to partners of proceedings) and section 6231(a)(1)(B) (relating to the exception for small partnerships), spouses holding a joint interest in a partnership shall be treated as one person. Except as provided in paragraph (b)(2) of this section, the Service or the tax matters partner may send any required notice to either spouse.

(2) *Identified spouse entitled to notice.* For purposes of applying section 6223 (relating to notice to partners of proceeding) for a partnership taxable year, an individual who holds a joint interest in a partnership with his or her spouse who is entitled to notice under section 6223 shall be entitled to receive separate notice under section 6223 if such individual:

(i) Is identified as a partner on the partnership return for that taxable year; or
(ii) Is identified as a partner entitled to notice as provided in § 301.6223(c)–1T(b).
(c) *Cross-reference.* See § 301.6231(a)(2)–1T(a) for special rules relating to spouses who file joint returns with individuals holding a separate interest in a partnership.

**25.** The two exceptions are as follows. First, if a spouse is separately identified on the partnership return as a member of the partnership return in her own right, she is entitled to separate notice. *See* Temp. Treas. Reg. § 301.6231(a)(12)–1T(b)(2)(i). Second, she is also entitled to separate notice if she has been "identified as a partner entitled to notice in § 301.6223(c)–1T(b)." *Id.* –1T(b)(2)(ii). Temporary Treasury Regulation section 301.6223(c)–1T(b) allows any person to file a statement with the IRS to "correct or supplement" the information regarding the "partners in the partnership" as recorded on the partnership return.

ship are generally treated as one person (except in the circumstances specified in paragraph (b)(2)).

The Tax court in *Dubin*, however, in effect read the regulation as reversing that scheme. *Dubin* began its analysis by noting that because Alan and Jewell held a joint interest in a partnership, under Code section 6231(a)(12) they are treated collectively as one person. *See Dubin*, 99 T.C. at 331. It then immediately noted that "[b]y regulation, however, on account of such joint interests, [Jewell and Alan] are each treated as one partner for purposes of applying the TEFRA procedures." *Id.* (citing Temp. Treas. Reg. § 301.6231(a)(12)–1T(a) (hereinafter referred to as "paragraph (a)")).

The court then embarked on a convoluted argument, relying on the premise that "person" and "partner" mean the same thing in these provisions, to conclude that paragraph (a) "[b]y way of exception . . . *reverses* the general rule [of Code section 6231(a)(12) ], setting forth *a new general rule that spouses holding a joint interest in a partnership are treated as separate persons (or partners )*." *Dubin*, 99 T.C. at 333 (emphasis added). In effect, *Dubin* concluded that Temporary Treasury Regulation section 301.6231(a)(12)–1T overruled "[b]y way of exception" the clear statutory command that "a husband and a wife who have a joint interest in a partnership shall be treated as 1 person." I.R.C. § 6231(a)(12). It therefore held that the Commissioner's "single-person theory . . . cannot be supported." *Dubin*, 99 T.C. at 335.

We set forth the Tax Court's argument in *Dubin* at some length, before observing why we find it mistaken.

The Tax Court began by framing the question as limited to the interplay between section 6231(a)(12) and paragraph (a) of the regulation.

To understand the interplay between section 6231(a)(12) and paragraph (a), it is necessary to determine whether any

distinction exists between the terms "person" and "partner", as those terms are used in section 6231(a)(12) and paragraph (a). As will be discussed, we believe that the term "partner" (as used in paragraph (a)) means exactly the same thing as the term "person" (as used in section 6231(a)(12)).

*Dubin*, 99 T.C. at 331. In an effort to support its premise that "partner" and "person" mean exactly the same thing, the court turned first to the use of those terms in the regulations.

Before turning to section 6231(a)(12) and paragraph (a) in particular, it is instructive to note that the terms "partner" and "person" sometimes are used without clear distinction throughout the temporary regulations issued in support of the TEFRA procedures. "Person" sometimes is used as a synonym for "partner." [examples omitted] A fair generalization is that, except where the context requires otherwise, no distinction was intended, and the terms "person" and "partner" are used interchangeably in the temporary regulations.

*Id.* at 331–32. The court then undertook to demonstrate that "person" and "partner" are used interchangeably not just in the regulations but that "the same can be said with regard to the . . . regulations and the statute." *Id.* at 332. It concluded that "except where the context requires otherwise, the term 'partner' (or 'person'), when used in the . . . regulations, was not intended to have any different meaning from, and is used interchangeably with, the term 'person' (or 'partner') in the [Code]." *Id.* The court then drew two conclusions.

First, if personhood and partnerhood were independent concepts, then paragraph (b)(1) [Temp. Treas. Reg. § 301.6231(a)(12)–1T(b)(1) (hereinafter "paragraph (b)(1)"]) would be meaningless. As stated, section 6223(a) provides that each partner must receive notice. Therefore, since paragraph (a) provides generally that a husband and wife with a

joint interest are each a partner, the meaning of section 6223(a), unless elsewhere modified, is that each such spouse is entitled to notice. If personhood were an independent characteristic from partnerhood, then the one-person rule of paragraph (b)(1) would have no effect on section 6223, which provides that each partner (not each person) is entitled to notice. We think it unlikely that paragraph (b)(1) is meaningless and conclude that: (1) Paragraph (b)(1)'s one-person rule supersedes paragraph (a)'s two-partner rule, and (2) person and partner must, in that context, mean the same thing.

Second, if personhood and partnerhood were independent concepts, then paragraph (b)(1) would be superfluous. Section 6231(a)(12) provides that spouses with a joint interest are generally treated as one person. Thus, the one-person rule of paragraph (b)(1) is superfluous unless the one-person rule of section 6231(a)(12) is superseded by some other Code provision or regulation. We think it unlikely that paragraph (b)(1) is superfluous and therefore conclude that paragraph (b)(1) must be necessitated by some limitation on section 6231(a)(12). Since paragraph (a) is the only provision that arguably limits section 6231(a)(12), we conclude that: (1) *Paragraph (a)' s two-partner rule supersedes section 6231(a)(12)'s one-person rule,* and (2) person and partner must therefore mean the same thing, both as between paragraphs (a) and (b)(1) and paragraph (a) and section 6231(a)(12).

*Dubin,* 99 T.C. at 332–33 (emphasis added). Having thus purportedly demonstrated that "person" and "partner" are not only used interchangeably but actually "mean the same thing," the Tax Court proceeded to show how this equivalence stripped the statutory and administrative scheme of its purported "mystery."

Overall, the statutory and administrative scheme would be quite difficult to fath-om if "person" and "partner" were (in the TEFRA context) intended as wholly distinct concepts. If that were so, then [Temporary Treasury Regulation] section 301.6231(a)(1)–1T(a)(1) (which, without explanation, substitutes the term "person" for "partner") could only be regarded as a stealthy amendment to section 6231(a)(1)(B)(i). Also, paragraph (b)(1) would properly be regarded as both irrelevant and redundant. The weight of those suppositions is too much to bear.

In contrast, once it is accepted that the terms "person" and "partner" mean the same thing in the context of section 6231(a)(12) and paragraphs (a) and (b)(1), the statutory and administrative scheme is stripped of all mystery. Section 6231(a)(12) sets forth a general rule that, in default of a regulatory exception, spouses with a joint interest in a partnership are treated as one person (or partner). *By way of exception,* paragraph (a) *reverses* the general rule, setting forth a *new general rule that spouses holding a joint interest in a partnership are treated as separate persons (or partners ).* Paragraph (b)(1) sets forth exceptions to the new general (default) rule. Thus, by way of exception, spouses holding a joint interest in a partnership are sometimes treated as one partner (person) for purposes of the notice provisions found in section 6223 and always are treated as one partner (person) for purposes of the small partnership exception found in section 6231(a)(1)(B). *Paragraph (b)(1) is therefore an exclusive list of exceptions to the general rule imposed by paragraph (a).* . . . Of course, pursuant to the authority granted by section 6231(a)(12), the Secretary can expand that list.

*Dubin,* 99 T.C. at 333–34 (emphases added). On this elaborate reasoning, *Dubin* based its holding. The "two-partner rule [of paragraph (a) of the Regulation] supersedes [Code] section 6231(a)(12)'s one-per-

son rule." *Id.* at 333. Because paragraph (a) of the regulation, by way of exception, reverses the general rule of section 6231(a)(12), because paragraph(b)(1) provides an exclusive list of exceptions to the "separate persons (or partners)" rule announced by paragraph (a), and because the "bankruptcy rule [Temp. Treas. Reg. § 301.6231(c)–7T(a) ] is not one of the provisions for which an exception to the general rule of paragraph (a) applies, by virtue of paragraph (b)(1)," *Dubin,* 99 T.C. at 333–34, the Tax Court concluded that for the purposes of applying that rule there was no authority to treat Jewell and Alan Dubin as "1 person," notwithstanding the plain command of the statute. *See* I.R.C. § 6231(a)(12).

We think the *Dubin* court's analysis of the statutory and regulatory framework is mistaken.

(a) *The statutory and regulatory scheme is not in need of being "stripped of its mystery."*

As set out above, the statutory scheme arising from the interplay of sections 6231(a)(2)(B) and 6231(a)(12), while somewhat complex, is clear and logical: a husband and wife who must each take their share of partnership items into account because they own a joint interest (1) are each treated as partners, entitled to participate in the proceedings; but because their joint interest is a single membership in the partnership, (2) they are treated as one person. The pertinent *regulation* substantially restates and applies this statutory scheme. That two individuals may collectively constitute a single person or entity is a commonplace. There is no illogicality—no "mystery"—no need for reformation.

(b) *Paragraph (a) is not an exception to section 6231(a)(12).*

From the start, *Dubin* considers only the "interplay between section 6231(a)(12) and paragraph (a)," *Dubin,* 99 T.C. at 331. It nowhere considers the interplay between Code sections 6231(a)(12) and 6231(a)(2)(B). It therefore assumes that paragraph (a) of the regulation is the "exception" allowed by section 6231(a)(12) ("Except to the extent provided otherwise in regulations ...."). What the *Dubin* opinion fails to recognize is that paragraph (a) is simply a restatement and application of the proposition of section 6231(a)(2)(B) that spouses who each must take into account partnership items (because they own a joint interest in the partnership) are treated as partners. Neither section 6231(a)(2)(B), nor paragraph (a) of the Regulation that confirms it, are exceptions to the "1–person" principle of section 6231(a)(12).

In our view, therefore, the fundamental error of the Tax Court in *Dubin* was to overlook the relationship between paragraph (a) and Code section 6231(a)(2)(B). *See, e.g., Dubin,* 99 T.C. at 333 ("paragraph (a) is the *only provision* that arguably limits section 6231(a)(12)") (emphasis added); *id.* at 334 (implying that section 6231(a)(2)(B) is of "no relevance"). · Had the court focused on that relationship it would have seen that paragraph (a) of the Regulation, far from providing an exception that overturns the general rule of section 6231(a)(12) simply applies the rule of section 6231(a)(2)(B) to a husband and wife whose joint interest in the partnership requires each to take his or her share of partnership items into account. In short, a husband and wife owning a joint interest are both treated as "partners" by independent operation of section 6231(a)(2)(B), not by regulatory exception to section 6231(a)(12).

(c) *The premise that "person" and "partner" mean the same thing is insupportable.*

We see no justification for *Dubin*'s remarkable assertion that the words "person" and "partner" "mean the same thing." The *Dubin* opinion concedes this conclusion is essential to support its contention that paragraph (a) ("spouses holding a

joint interest ... are treated as partners") is the exception that reverses the general rule of section 6231(a)(12) ("[A] husband and wife who have a joint interest ... shall be treated as 1 person.").

We do not dispute that "partner" and "person" are sometimes used interchangeably.[26] But this does not prove that they mean the same thing. Of course, because a partner—whether an entity or an individual—is a person and a person can be (or can be treated as) a partner, there are instances where either word could be used without error. In addition, there exist instances where the regulations have used "person" where "partner" would have tracked the statutory language more closely and might have been more precise. Observing one such instance, *Dubin* contends that unless "partner" and "person" mean the same thing, then Temporary Treasury Regulation section 301.6231(a)(1)–1T(a)(1) "could only be regarded as a stealthy amendment to section 6231(a)(1)(B)(i)." *Dubin*, 99 T.C. at 333. We disagree.

Code section 6231(a)(1)(B)(i) is a counting rule designed to exclude from the scope of subchapter C small partnerships having ten or fewer partners of specified types. Each partner must be "an individual (other than a nonresident alien), a C corporation, or an estate of a deceased partner." I.R.C. § 6231(a)(1)(B)(i). The statute provides that for the purposes of this count, "a husband and wife (and their estates) shall be treated as *1 partner*." I.R.C. § 6231(a)(1)(B) (emphasis added). The corresponding regulation states that, "[f]or purposes of section 6231(a)(1)(B) and this section, a husband and wife (and their estates) are treated as *one person.*" Temp. Teas. Reg. § 301.6231(a)(1)–1T(a)(1) (emphasis added). Where the Code states a husband and wife would be counted as "1 partner," the regulation says that they are

counted as "one person." But this does not mean that the regulation would constitute a "stealthy amendment" of the statute unless we read "person" as meaning the same thing as "partner." In the context of this regulation, it makes little difference which term is used.

This is a counting rule: the important point, for the purposes of determining whether the partnership may elect out of subchapter C, is that the husband and wife are counted as "one" and not as "two." In this context, the regulation could have used "partner" or "person" and it would not have changed the meaning. We agree that the regulation would have tracked the statutory language more closely had it used the word "partner" instead of "person," but the meaning remains clear. At most, the substitution of "person" for "partner" in this context represents a careless slip or stylistic choice. It does not justify the extraordinary conclusion that in the regulatory scheme there is no difference between the meanings of "partner" and "person."

(d) *Should the Regulation be reinterpreted lest paragraph (b)(1) be superfluous?*

The Tax Court argued that paragraph (b)(1) of Temporary Treasury Regulation section 6231(a)(12)–1T, which restates and applies the statutory one-person rule, would be "superfluous unless the one person rule of section 6231(a)(12) is superseded by some other code provision or regulation." *Dubin*, 99 T.C. at 333. The supposition that "paragraph (b)(1) would properly be regarded as both irrelevant and redundant" was "too much too bear." *Id.* We do not understand the argument.

It is a commonplace for Treasury Regulations to restate the Code's propositions

---

26. We note that *Dubin* contends only that person and partner are sometimes used interchangeably within the regulations and between the regulations and the Code. *Dubin* nowhere contends that "person" and "partner" are used to mean the same thing within the Code. In fact, that Jewell and Alan were simultaneously two "partners" under section 6231(a)(2)(B) but also one "person" under section 6231(a)(12) suggests that these words have different meanings, both of which Congress intended to be given effect.

before proceeding to interpret and apply them. By the Tax Court's reasoning, a vast number of interpretative regulations would be rendered "superfluous." Further, in a statutory scheme as complex as the Internal Revenue Code and its implementing Treasury Regulations, we should not be surprised to find repetitive "surplusage."[27] *J.C. Penney Co. v. Commissioner,* 312 F.2d 65, 72 (2d Cir.1962) (Friendly, *J.*); *see also White v. Roughton,* 689 F.2d 118, 120 (7th Cir.1982) (Posner, *J.*) (observing that the rule against superfluity rests on the "unrealistic premise" that every provision is drafted with complete precision of language.)

As between tolerating an interpretive repetition that is unnecessary because it restates a proposition already stated in the Code and reinterpreting terminology in order to construe a regulation to avoid such redundancy, with the result that the regulation is read to reverse the general rule established by the Code, it seems clear to us which is the lesser evil.

(e) Dubin *reads a purported exception to swallow the rule.*

Apart from the other flaws in *Dubin*'s reasoning, the exception that it finds in paragraph (a) of the Regulation is so broad that it swallows the statutory rule. In *Dubin*'s own words, according to its interpretation, "[p]aragraph (a)'s two-partner rule supersedes section 6231(a)(12)'s one-person rule." *Dubin,* 99 T.C. at 333; *see also id.* ("By way of exception, paragraph (a) reverses the general rule ..."); *Gillilan v. Commissioner,* 66 T.C.M. (CCH)

398, 402, 1993 WL 311552 (1993) (repeating that paragraph (a) "supersede[s]" and "reverses the general rule of Section 6231(a)(12) ..."). In two respects, this reasoning is unacceptable. First, the Regulations do not prevail over the Code; here, the Code authorizes only exceptions by regulation. *See* I.R.C. § 6231(a)(12). Second, exceptions are normally applied narrowly and are not properly construed to effect a complete reversal. *See, e.g., Commissioner v. Clark,* 489 U.S. 726, 739, 109 S.Ct. 1455, 103 L.Ed.2d 753 (1989) ("In construing provisions ... in which a general statement ... is qualified by an exception, we usually read the exception narrowly in order to preserve the primary operation of the provision.").

In conclusion, in our view, the *Dubin* court (i) found "mystery" in provisions of the Code and implementing Regulations which in fact stand together in a logical, coherent scheme; (ii) mistook paragraph (a) of the pertinent Regulation to be an exception to Code 6231(a)(12), failing to recognize that this paragraph simply applies Code section 6231(a)(2)(B) to a husband and wife owning a joint interest; (iii) needlessly treated terms of the Code and Regulations as meaning other than what they say; and (iv) unnecessarily distorted the meaning of an entire Regulation, lest one subparagraph be rendered "superfluous" for repeating a general principle established in the Code; all to conclude that (v) a Regulation "[b]y way of exception" "supersedes" and "reverses" a rule established by the Code. While leaving the

---

27. That is certainly the case within the TEFRA statute and regulations. Even if we were to accept the Tax Court's extraordinary argument that paragraph (a) must reverse section 6231(a)(12) because otherwise paragraph (b)(1) would be "superfluous," this would not purge the statutory and regulatory scheme of repetitive "surplusage." Paragraph (b)(1) would remain superfluous to the extent that it repeats that for the "purposes of applying ... section 6231(a)(1)(B) (relating to the exception for small partnerships), spouses holding a joint interest in a partnership shall

be treated as one person." Temp. Treas. Reg. § 301.6231(a)(12)–1T(b)(1). This provision merely confirms what has been provided independently by the Code, *see* I.R.C. § 6321(a)(1)(B)(i) ("a husband and wife (and their estates) shall be treated as 1 partner"), and further confirmed by a separate regulation, *see* Temp. Treas. Reg. § 301.6231(a)(1)–1T(a)(1) ("For purposes of section 6231(a)(1)(B) and this section, a husband and wife (and their estates) are treated as one person.").

question open, we express serious doubts about *Dubin*'s reasoning.

### D. Deference to the Commissioner's litigating position?

The IRS's considered view on the interpretation of the Internal Revenue Code and the Regulations adopted under it is generally entitled to considerable deference. *See, e.g., Jewett v. Commissioner,* 455 U.S. 305, 318, 102 S.Ct. 1082, 71 L.Ed.2d 170 (1982) (canon of construction that Commissioner's consistent interpretation of Code is entitled to respect is "even more forceful when applied to the Commissioner's interpretation of his own Regulation"); *see generally Bowles v. Seminole Rock & Sand Co.,* 325 U.S. 410, 413–14, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945) (agency interpretation of its own regulation is entitled to "controlling weight unless it is plainly erroneous or inconsistent with the regulation"). On the other hand, that the Commissioner advocates a certain interpretation in a particular litigation does not alone justify judicial deference to that interpretation. *See Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 213, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988) ("Deference to what appears to be nothing more than an agency's convenient litigating position would be entirely inappropriate."); *cf. CSI Hydrostatic Testers, Inc. v. Commissioner,* 103 T.C. 398, 409, 1994 WL 466342 (1994) (no deference due to Commissioner's interpretation where it is neither longstanding nor a matter of public record upon which the public is entitled to rely when planning its affairs).

It is not always easy to distinguish the circumstances when deference is due from those in which it is not. The Supreme Court has looked sometimes to the consistency of an agency's interpretations as a measure of deference due. *See I.N.S. v. Cardoza–Fonseca,* 480 U.S. 421, 446 n. 30, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987) ("An agency interpretation ... which conflicts with the agency's earlier interpretation is 'entitled to considerably less deference'

than a consistently held agency view.") (citation omitted). However, the Court has instructed that an agency is not "disqualified from changing its mind" nor "estopped from changing ... a mistaken legal interpretation." *Good Samaritan Hosp. v. Shalala,* 508 U.S. 402, 417, 113 S.Ct. 2151, 124 L.Ed.2d 368 (1993). At other times, the Court has accorded deference, even to agency interpretations appearing for the first time in an *amicus* brief, where there "is simply no reason to suspect that the interpretation does not reflect the agency's fair and considered judgment on the matter in question." *Auer v. Robbins,* 519 U.S. 452, 462, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997). A new, and therefore inconsistent position, may yet be "fair and considered." Agency expertise underwrites *Chevron*'s theory of deference, *see Pension Benefit Guar. Corp. v. LTV Corp.,* 496 U.S. 633, 651–652, 110 S.Ct. 2668, 110 L.Ed.2d 579 (1990) ("[P]ractical agency expertise is one of the principal justifications behind *Chevron [U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)]* deference."); as *Good Samaritan Hospital* recognized, experts will change their minds. However, notwithstanding this recognition, the consistency of an agency's position remains a factor to be considered in assessing the deference due that position. *See Good Samaritan Hosp.,* 508 U.S. at 417, 113 S.Ct. 2151; *see also Federal Election Comm'n v. Democratic Senatorial Campaign Comm.,* 454 U.S. 27, 37, 102 S.Ct. 38, 70 L.Ed.2d 23 (1981) (noting that the "thoroughness, validity, and consistency of an agency's reasoning are factors that bear upon the amount of deference" due an agency's interpretation). The weight to be given to consistency as a factor in determining how "fair and considered" is the agency's position, will ultimately "depend on the facts of individual cases." *Good Samaritan Hosp.,* 508 U.S. at 417, 113 S.Ct. 2151.

In this case, the Commissioner has taken inconsistent positions before, during

and after this litigation. And there is evidence that the Commissioner's "fair and considered position" does not accord with either the Tax Court's reasoning in *Dubin* or his brief in this case. It is, therefore, difficult to avoid concluding that the Commissioner's position on appeal is nothing more than " 'a post-hoc rationalizatio[n]' advanced by an agency seeking to defend past agency action against attack." *Auer*, 519 U.S. at 462, 117 S.Ct. 905 (quoting *Bowen*, 488 U.S. at 212, 109 S.Ct. 468).

The Commissioner has taken positions contrary to the position he takes in this litigation. The Commissioner argues to us that we should accept and extend the Tax Court's ruling in *Dubin*. But in *Dubin*, the Commissioner took the opposite position. When Alan Dubin filed for bankruptcy his partnership items were converted to nonpartnership items, *see* I.R.C. § 6231(b)(1)(D), (c); Temp. Treas. Reg. § 301.6231(c)–7T(a), with the result that the deficiency procedures of subchapter B applied to assessments attributable to those items, *see* I.R.C. § 6230(a)(2)(A)(ii). In that case, the Commissioner argued that Jewell Dubin's share of the partnership items converted also, pursuant to the command of section 6231(a)(12) that a "husband and wife who have a joint interest in a partnership shall be treated as 1 person." Further, the Commissioner evidently argued that spouses filing a joint return have one set of partnership items regardless whether the partnership interest is held jointly (Jewell Dubin's case) or separately by one spouse (Elizabeth Callaway's case). *See Dubin*, 99 T.C. at 334.[28] As noted above, the Tax Court relied on a

complicated, and in our view unconvincing, reading of the regulations to reject the Commissioner's position.

As recently as October 1999, after the submission of his briefs in this case and less than one month after advocating that we extend *Dubin*'s holding, the Commissioner "acquiesced in result only" in the *Dubin* case. *See Actions Relating to Court Decisions*, 1999–40 I.R.B. 438, 1999 WL 779941. Such a designation affirmatively indicates the Service's *"disagreement or concern with some or all* of [the court's] *reasons." Id.* (emphasis added)[29] Since *Dubin* was decided entirely as a matter of interpretation of the Code and regulations, we conclude that the Commissioner disagrees with or at least remains concerned about the interpretation of the TEFRA framework articulated by the Tax Court.

Lastly, in its initial actions in this case, the IRS adopted a position contrary to the one the Commissioner now advocates. In August and September 1993, over eighteen months after James Callaway's estate requested prompt assessment, thereby converting his partnership items into nonpartnership items, the IRS entered "precautionary" assessments against both James and Elizabeth. However, the Commissioner now contends that the 1996 assessments against Elizabeth were proper and timely because Elizabeth was a Mountain View partner with partnership items, at all times bound as a party to the Mountain View partnership-level proceedings. *See Callaway*, 75 T.C.M. (CCH) at 1960. But if that were the case, any assessment of tax attributable to her partnership

28. Relying on *Dickman v. Commissioner*, 465 U.S. 330, 343, 104 S.Ct. 1086, 79 L.Ed.2d 343 (1984), the Commissioner responds that he is entitled to change his interpretation of the law when he concludes that his previous view was erroneous. That may be so. Our point is that he has affirmatively indicated that he has *not* changed his view.

29. Any acquiescence serves only to guide "Service personnel working with the same or similar issues." *Id.* It shall be relied on with-

in the Service only when "applying the law to the facts in the particular case" and Service personnel are warned that "[c]aution should be exercised in extending the recommendation of the Action on Decision to similar cases where the *facts are different." Id.* (emphasis added). In short, even an Action on Decision indicating unqualified acquiescence only even indicates that "the Service will follow [a holding] in disposing of cases with the same controlling facts." *Id.*

items could only occur at the close of the subchapter C proceedings. *See* I.R.C. § 6225(a); *cf.* Temp. Treas. Reg. § 301.6221–1T(a) ("A partner's treatment of partnership items on the partner's return may not be changed except as provided in sections 6222 through 6231 of the Code."). It is undisputed that the section 6226 proceedings in the Court of Federal Claims were still pending in August and September of 1993. Therefore, according to the position now advocated by the Commissioner, the "precautionary" assessments against Elizabeth were improper—a point he conceded in his papers below. We may infer from this that the IRS's initial position was that the prompt assessment converted the partnership items with respect to both spouses.

In view of the positions previously and subsequently taken by the Internal Revenue Service, especially its contrary argument in *Dubin* and its continued reservation of disagreement with *Dubin's* reasoning, it is difficult to view the position it adopts here as other than a litigating strategy to recover from the error of having allowed the statute of limitations to expire against assessments attributable to James's Mountain View items.

Of course, if the IRS decides it wishes to adhere to the position taken in this litigation, it may promulgate rules to that effect.

### E. The Commissioner's appeals to equity are without merit.

At oral argument, the Commissioner appealed to the equity of the IRS's position, reasoning that Elizabeth had enjoyed the benefits of joint filing when the tax losses were first taken into account, and should now bear the burden of their disallowance. We are unpersuaded by this argument.

First, equity plays a very limited role in tax cases. *See, e.g., Lewyt Corp. v. Commissioner,* 349 U.S. 237, 249, 75 S.Ct. 736, 99 L.Ed. 1029 (1955) (Frankfurter, J., dissenting) ("Where the taxing measure is clear, of course, there is no place for loose conceptions about the 'equity of the statute.' ... [O]ne should sail close to the shore of literalness in dealing with the technical problems which are the subject matter of revenue laws."). The task of an appellate court in such cases is "not that of weighing equities, but of determining technical application of the law [consistent] ... with the well-established view that tax laws are technical and, for the most part, are to be accordingly interpreted." *Ewing v. United States,* 914 F.2d 499, 501 (4th Cir.1990) (citations omitted). As we read the Code, it precludes the Commissioner's arguments.

Second, if there is "inequity," it does not result from our interpretation of these statutes but rather from the fact that the IRS needlessly allowed the statute of limitations to expire. The IRS simply failed to adjust the treatment of decedent's partnership losses and assess deficiencies in a timely manner, following the proper procedure. It is in the nature of limitations periods that they prevent the recovery of otherwise valid claims. That is all that happened here.[30]

James Callaway died on December 8, 1990. His estate filed a timely request for prompt assessment on December 23, 1991, posting nearly $150,000 in cash bonds. That action, in converting his distributive share of partnership items to nonpartnership items put the Service on notice and freed it to determine and to assess any deficiencies under subchapter B of Chapter 63 unconstrained by the TEFRA framework. It had a year in which to so proceed. *See* I.R.C. §§ 6229(f), 6501(d).

---

**30.** The Supreme Court has long recognized that statutes of limitations are of particular importance in tax cases. *See generally Rothensies v. Electric Storage Battery Co.,* 329 U.S. 296, 301–03, 67 S.Ct. 271, 91 L.Ed. 296 (1946) (statutes of limitations are inherently arbitrary and cannot discriminate between the just and the unjust claim, sometimes working to the taxpayer's advantage and sometimes to the government's; however, they are essential to the administration of the tax system).

However, it did nothing. Now, having let the statute run as to its valid claim under subchapter B, the Commissioner argues that TEFRA allows the IRS a second chance to achieve the same result by way of a computational adjustment against Elizabeth. The Code, however, does not support that position.

CONCLUSION

For the foregoing reasons so much of the Tax Court's order as ruled that the 1996 computational adjustments and 1996 determinations of additions to tax were proper and not time barred with respect to Elizabeth Callaway is REVERSED, and the case is REMANDED to the Tax Court for further proceedings consistent with this opinion.

POOLER, Circuit Judge, concurring in part:

I concur in the result that the majority reaches. However, I write separately to note that I do not join in the majority opinion at pages 106–35, in which the majority undertakes a detailed analysis of *Dubin v. Commissioner*, 99 T.C. 325, 1992 WL 220119 (1992). Expressing no view on the merit of that analysis, I believe that after having stated that *Dubin* "ha[s] no bearing on this case," it is best not to discuss the substance of the *Dubin* opinion. I simply would leave that task to a future panel presented with a case on which *Dubin* does have bearing.